IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| ALMA ROSA AGUILAR | § |
| | § |
| Plaintiff, | § |
| | § |
| | § Civil Action No. H-06-2072 |
| v. | § |
| | § |
| | § |
| MICHAEL J. ASTRUE | § |
| *Commissioner of Social Security Administration* | § |
| Defendant. | |

## MEMORANDUM AND ORDER

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) for a review of a final decision

of the Commissioner of the Social Security Administration denying Plaintiff's claim for a period of

disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423.

Plaintiff and Defendant have each filed a motion for summary judgment.

For the reasons that follow, the Court finds and concludes that Plaintiff's Motion for

Summary Judgment should be **DENIED**, and that Defendant's Motion should be **GRANTED.**

### I. FACTUAL AND PROCEDURAL BACKGROUND

The following narrative appears to be uncontested. Plaintiff suffered a closed end head injury

on March 8, 2002, when a vehicle struck from behind the vehicle she was driving. Plaintiff filed an

application for Title II disability benefits, alleging disability because of post-concussion syndrome.

After the Agency denied Plaintiff's application at the initial and reconsideration levels of

administrative review, a hearing was held before an Administrative Law Judge ("ALJ"). The ALJ

-1-

found that Plaintiff did have post-concussion syndrome with organic brain impairment, lumbar disc disease, diplopia, hypertension, headaches, arthritis, and paresthesia. The ALJ determined, however, that these impairments did not meet or medically equal a listed impairment under governing law. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") for light work limited to performing simple and repetitive tasks with only incidental contact with the public, and various other restrictions. Although the ALJ found that Plaintiff could not perform the kinds of work that she had done prior to the accident, she could perform other work existing in significant numbers in the national economy such as an office helper, mail clerk, and sorter. The ALJ's decision became the final decision of Defendant upon the Appeals Council's denial of Plaintiff's request for review. Plaintiff subsequently filed this action.

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to two inquiries: 1) whether substantial evidence supports the Commissioner's decision; and 2) whether the decision comports with relevant legal standards. *Anthony v. Sullivan,* 954 F.2d 289, 292 (5th Cir. 1992). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## III. BURDEN OF PROOF

The sequential analysis used in examining a disability claim is a familiar one. The Commissioner is to determine if 1) the claimant is currently engaging in substantial gainful activity; 2) the claimant has a severe impairment; 3) the impairment meets or equals the severity of a listed impairment in Appendix 1 of the pertinent regulations; 4) the impairment prevents the claimant from

performing past relevant work in the light of her RFC; and 5) the impairment prevents the claimant from adjusting to other work in light of her RFC. 20 C.F.R. § 404.1250. "The claimant bears the burden of proof on the first four steps, and the burden shifts to the Commissioner on the fifth step to show that the claimant can perform other substantial work in the national economy. Once the Commissioner makes this showing, the burden shifts back to the claimant to rebut this finding." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (internal citations omitted). The ALJ ruled against Plaintiff at the fifth step of the analysis.

## IV. PLAINTIFF'S CONTENTIONS

Before this Court, Plaintiff makes two different arguments as to why the ALJ's decision should be reversed or, at the least, remanded. First, Plaintiff argues that the ALJ failed to consider the evidence from neuropsychologist John D. Largen, Ph.D. Second, Plaintiff argues that the ALJ's hypothetical question posed to the vocational expert ("VE") during the hearing was defective because it did not include all of Plaintiff's limitations, and specifically did not include limitations related to her visual impairments.

To assess these arguments, a detailed review of the record is necessary.

## V. THE EVIDENCE BEFORE THE ALJ

Plaintiff was born in 1960, and holds an undergraduate degree in psychology. Tr. at 145. She has several  licenses or certifications including Clinically Certified Forensic Counselor, Clinically Certified Domestic Violence Counselor, and  Disease Intervention Specialist. *Id.* Her employment history includes work as a school counselor, a disease intervention specialist for the city of Houston, and as a nurse for a doctor in private practice. Plaintiff is fluent in English and Spanish. Tr. at 145-46.

-3-

The ALJ found that Plaintiff's "post-concussion syndrome with organic brain impairment, lumbar disc disease, diplopia, hypertension, headaches, arthritis, and paresthesia on the left are considered 'severe' based on the requirements in the Regulations (20 C.F.R. § 404.1520(c)." Tr. at 23. The ALJ immediately went on, however, to find that "these medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4." *Id.* The ALJ thus found that, although Plaintiff could not perform any of the jobs she had previously held, she could perform light work, including simple and repetitive tasks with only incidental contact with the public, no constant use of the hands for repetitive tasks such as keyboarding, and avoidance of heights and open machinery. *Id.* Accordingly, the ALJ concluded that Plaintiff was not disabled. *Id.*

### A. Dr. Largen's Evaluation of Plaintiff

Plaintiff was referred to Dr. Largen by Dr. Igor Cherches, one of her treating physicians. Dr. Largen saw Plaintiff three times in November and December 2002. As far as is reflected in the record, he did not see her again and never treated her. Dr. Largen's report (Tr. at 260-73) contained an account of Plaintiff's automobile accident, a list of Plaintiff's health problems as told by her to him, and the results of Dr. Largen's observation and testing of Plaintiff. Among Dr. Largen's conclusions were that Plaintiff gave "no indication of symptom invalidity, lack of effort, or malingering . . . "; that Plaintiff's test scores "were commensurate with mild to moderate organic brain impairment"; that, although Plaintiff might improve somewhat over the following twelve months, "there is a strong probability that she will have some permanent neurobehavioral resident impairment." Tr. at 270-71. In the "Recommendations" section of his report, Dr. Largen noted that, "It is highly unlikely that this patient can work in her previous capacity as a nurse and disease

-4-

intervention specialist and this evaluation will support an application for permanent disability." Tr. at 272.

Standing alone, Dr. Largen's report does provide a basis for a finding of disability. Considered in context with other aspects of the record, however, Dr. Largen's report is not so authoritative or so final as to cause the Court to hold that the ALJ lacked substantial evidence for his ruling. First, although Dr. Largen is doubtless experienced and competent in his field, he is not a medical doctor, did not ever treat Plaintiff, and lacked the continuing contact with her that would have allowed a more longitudinal assessment of her condition. Second, although Dr. Largen did conclude that Plaintiff would be unable to resume prior employment, he did not consider other employment which Plaintiff might seek. Third, and perhaps most important, Dr. Largen's report was inconsistent with the findings of physicians who had more opportunities to observe Plaintiff's objective rather than subjective conditions. For example, Dr. Cherches, Plaintiff's treating neurologist, stated that she could return to work in November 2002. Tr. 20, 318. Consultative examiner Dr. Edward F. Good, also a neurologist, concluded in July 2003 that Plaintiff had "experienced a very minor traffic accident with a questionable head injury. Everything objectively that has been performed on her is normal and there is no reason to suspect that she suffered any neurologic injury." Tr. at 349. Dr. Good or Dr. Cherches apparently referred Plaintiff to Dr. Jade Schiffman because of Plaintiff's complaints about her vision. Dr. Schiffman conducted a neuro-opthalmogic examination in November 2002 and concluded that her vision "was completely normal with the exception that the patient has a .5 prism diopter left hyperphoria at distance." Tr. at 348. There is no suggestion that Plaintiff's vision problems were disabling.

In August 2003, Dr. Emile Mathurin, Jr., who is board-certified in physical medicine and

rehabilitation, did note that Plaintiff has

> decreased ability to engage in activities that require handling objects, sitting and
> stooping. She has no evidence of upper motor neuron sign. There is quite a bit of
> incordination of the extremities. There is normal tone of the muscles and normal
> motor strength. Mood is appropriate. Short-term memory is mildly impaired. Serial
> sub[]traction  appears to be somewhat sluggish. Some element of symptoms
> magnification, specially with gait and cognition. Tr. at 353.

Mark Lehman, Ph.D., whose field is clinical and rehabilitation psychology, saw Plaintiff in

April 2005 and noted that she suffered from "Dementia due to Head Trauma, relatively mild" and

"Mood Disorder due to General Medical Condition, with depressive features, mild." Tr. at 448.

Dr. Lehman also noted other moderate limitations, but none that would lead to a conclusion that she

was disabled from all work in the national economy. Tr. 450-51.

Although the record does contain other evidence that could be viewed as supporting Dr.

Larger's view, there is nonetheless substantial evidence that, as the ALJ found, Plaintiff's allegations

regarding her limitations were not entirely credible. Tr. at 23. There is likewise substantial evidence

that Plaintiff can perform some kinds of work. *Id.* The fact that the ALJ did not specifically discuss

Dr. Larger's report and findings does not, in itself, invalidate the ALJ's well-considered analysis.

## B. The Hypothetical Questions Asked of the Vocational Expert

The key hypothetical that the ALJ posed to the VE did not reference any limitations on

Plaintiff's vision. Plaintiff argues that, in the face of such an omission, the ALJ's decision cannot

be sustained.

Here again, however, the ALJ had substantial evidence for disbelieving Plaintiff's subjective

statements about her vision. In particular, Plaintiff's admissions that she could drive a car, watched

-6-

television regularly, read, and attended  professional basketball games were inconsistent with  any claim that her vision rendered her totally disabled. Tr. at 18. Her claim  is also inconsistent with Dr. Schiffman's neuro-opthalmogic examination.

## VI. CONCLUSION

The submissions by both Plaintiff and Defendant are well-written and complete.  The Court acknowledges that, if it were asked to make a *de novo* determination of disability, it might reach a conclusion different from that of the ALJ.  That, however, is most decidedly not this Court's role. Limiting itself to the appropriate standard of review, the Court does find and hold that the ALJ's decision was based on substantial evidence and does not reflect any legal error.

For all the foregoing reasons, the Plaintiff's Motion for Summary Judgment is **DENIED,** the Defendant's Motion for Summary Judgment is **GRANTED**.  The case is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

Signed at Houston, Texas on this ____26____ day of July 2007.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

-7-